SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------X
ISLAND GLOBAL YACHTING LTD.,

                              Plaintiff,

    - against -

POOLE CAPITAL S.A., ANDREW J. BAKER,
PETER DORAN, and BRIAN R. M. PEARCE,

                              Defendants.
----------------------------------------X

Index No. 600 881 / 2006
Date Purchased: March 14, 2006

Plaintiff designates
New York County
as the place of trial.

The basis of the venue is plaintiff's residence

**SUMMONS WITH NOTICE**

MAR 14 2006

To each above named Defendant:

    **You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded.

    The basis of the action is for fraud, breach of a confidentiality agreement, and breach of an exclusivity agreement.

Dated: New York, New York
        March 14, 2006

                              NIXON PEABODY LLP

                              By: _____
                                  Adam B. Gilbert
                                  437 Madison Avenue
                                  New York, New York 10022
                                  (212) 940-3000

                                  *Attorneys for Plaintiff*

N265386.2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------X
ISLAND GLOBAL YACHTING LTD.,

              Plaintiff,

    - against -

POOLE CAPITAL S.A., ANDREW J. BAKER,
PETER DORAN, and BRIAN R. M. PEARCE,

              Defendants.
-----------------------------------------------------------X

Index No. 600881/2006

**COMPLAINT**

      Plaintiff, Island Global Yachting Ltd., by its attorneys, Nixon Peabody LLP, as and for its complaint, alleges upon information and belief as follows:

### The Parties

    1.    Plaintiff Island Global Yachting Ltd. is a Cayman Islands exempted company with an office in New York City. Plaintiff engages in, among other things, the acquisition, management and development of marina facilities and related properties throughout the world.

    2.    Defendant Poole Capital S.A. ("Poole") is a British Virgin Islands entity which holds rights to acquire and lease real property on the island of Grenada suitable for marina development.

    3.    Defendants Andrew J. Baker, Peter Doran and Brian R. M. Pearce (the "Individual Defendants") are officers, directors or agents of Poole.

### Jurisdictional Facts

4. In connection with the facts and circumstances described below, defendants came to New York with the purpose of inducing plaintiff to enter into an agreement with them; made numerous material misrepresentations in New York which are the subject of the claims set forth below; executed a letter of intent in New York, and repeatedly communicated with plaintiff both telephonically and in person in New York about the subject matter of a proposed transaction. All defendants are subject to personal jurisdiction of the Court.

### Facts Common to All Causes of Action

5. On or about December 19 and 20, 2005, the Individual Defendants held meetings in New York City with representatives of plaintiff with respect to a proposed development project in Grenada. Among other things, the Individual Defendants represented during those meetings that (a) Poole was a party to the Port George Project Agreement ("PGPA") with the Government of Grenada, pursuant to which Poole had the right to acquire and lease various properties from the Government of Grenada on the terms and conditions set forth in the agreement; (b) the properties included both upland properties and submerged lands suitable for marina development; and, critically, (c) Poole and the Individual Defendants had long standing and credible relationships with the Government of Grenada such that the obtaining of permits for infrastructure development, entitlements, and the performance of the Government's obligations would be achieved expeditiously.

6. The representations concerning the local expertise of the defendants and their ability to successfully navigate through the governmental processes of developing a complex marina facility were critical to plaintiff's analysis of defendants' proposal.

7. Between December 19, 2005 and January 23, 2006, the parties negotiated a written letter of intent, which was executed on or about January 23, 2006 (the "LOI"). The LOI described the nature of a proposed transaction between plaintiff and Poole, whereby Poole would contribute its interest in the PGPA to a joint venture with plaintiff; plaintiff in turn would contribute equity which would go toward payments for various properties and for satisfying other obligations of Poole; and the new joint venture would develop the property as a mixed use marina property.

8. Although the LOI by its terms was non-binding, two provisions thereof are expressly binding upon the parties. First, the parties agreed that through February 23, 2006, plaintiff would have the exclusive right to acquire the real property contemplated by the PGPA, with Poole through a joint venture, and Poole would not initiate, solicit, negotiate, accept or respond to any other proposals in respect of these assets. Second, the parties agreed that all information shared by plaintiff with Poole would be maintained in confidence, used solely for the purposes of effectuating the transaction contemplated by the LOI, and not used for any other purpose.

9. Following entry into the LOI, plaintiff proceeded to expend hundreds of thousands of dollars of out-of-pocket expenses and hundreds of man hours on due diligence in respect of the properties, the drafting of the necessary contribution and shareholders agreements, and other actions intended to facilitate the proposed transaction.

10. By letter agreement dated February 23, 2006, the LOI exclusivity period was extended to March 3, 2006.

11. By further letter agreement dated March 9, 2006, the LOI exclusivity period was extended to April 1, 2006.

12. On March 10, 2006, a principal of plaintiff met with the Prime Minister of the Government of Grenada to discuss the proposed transaction. At that meeting, plaintiff learned for the first time that the relationships between and among Poole, the Individual Defendants and the Government of Grenada were poor; and that, while it would honor its contractual commitments under the PGPA, the Government did not regard Poole or the Individual Defendants as credible or capable of undertaking the project contemplated by the PGPA and would prefer not to do business with them.

13. Critically, the Prime Minister indicated that by virtue of Poole's participation, it had no intention of extending the March 15, 2006 date in the PGPA whereby Poole had to complete the transactions contemplated thereby.

14. On or about March 10, 2006, plaintiff communicated to Poole that the Government would not extend the date of closing beyond March 15.

15. By email dated March 10 from Poole's counsel, Poole unilaterally withdrew its extension of the exclusivity period through April 1. Poole wrongfully took the position that it had the right to withdraw from its prior agreement and was no longer bound by any terms relating to exclusivity.

16. Over the next several days, the parties sought to come up with a way forward to meet the March 15 deadline. The parties agreed that the only way that this could occur was for plaintiff to take an assignment of the PGPA, close with the Government, and thereafter finalize the terms of the joint venture with Poole. Throughout the weekend of March 11-12, 2006, the parties worked toward this stated end.

17. On Monday, March 13, Poole advised plaintiff that it no longer wished to proceed as previously agreed, tersely stating that "we will acquire the [Grenada] site ourselves."

### First Cause of Action Against All Defendants

18. Plaintiff repeats and realleges the allegations of paragraphs 1 through 17 above.

19. At the time that defendants came to New York to discuss a proposed transaction with plaintiff, defendants materially misrepresented the nature of their relationship with the Government of Grenada, claiming that they were well liked by the Government and perceived as a developer with whom the Government could collaborate. Defendants never disclosed that their relationship with the Government had materially deteriorated and that they were perceived as lacking credibility.

20. Defendants knew at the time that they made these representations to plaintiff that the representations were material to any decision by plaintiff to proceed and were materially false. Defendants made these representations with scienter, intending plaintiff to rely upon them.

21. Plaintiff justifiably relied on defendants' representations and proceeded to negotiate and execute the LOI; expend incalculable man hours on the project; and expended monies for expenses in the hundreds of thousands of dollars.

22. As a consequence of defendant's fraud, plaintiff has been damaged by its loss of the profit potential of the joint venture, the significant value of the man hours spent on the transaction, and all out of pocket expenses incident thereto.

23. Defendants actions were willful and malicious and are properly addressed though an award of punitive damages.

### Second Cause of Action Against All Defendants

24. Plaintiff repeats and realleges paragraphs 1 though 23.

25. The extension of the exclusivity period through April was expressly negotiated and formalized in a written extension letter.

26. Defendant's unilateral position that it was withdrawing from the extension constitutes a breach of the exclusivity provisions in the LOI. Defendants' breach was wrongful and without cause and intended to cause harm to plaintiff.

27. By advising plaintiff that it no longer intends to negotiate exclusively with plaintiff through April 1, but, instead, to unilaterally acquire title to the properties under the PGPA, defendants are in breach of contract for which plaintiff will suffer material damage.

### Third Cause of Action Against All Defendants

28. Plaintiff repeats and realleges paragraphs 1 through 27.

29. Throughout the period at least from December 19, 2005 until March 13, 2006, defendants repeatedly represented to plaintiff that they did not have the financial wherewithal to acquire the properties under the PGPA and needed an equity source such as plaintiff.

30. Throughout the period from the execution of the LOI until March 13, 2006, plaintiff shared material confidential information with defendants, including financial information on economic feasibility, development concepts and other unique and proprietary information created and developed by plaintiff.

31. To obtain the financing necessary to close the PGPA on March 15, 2006, defendants necessarily had to share plaintiff's confidential and proprietary information and/or the proposed transaction with plaintiff with other potential investors. Without improperly trading on the name and reputation of plaintiff and its confidential information, defendants would likely not have found other sources of equity and would have defaulted on PGPA.